GIDDINGS <em>against</em> CANFIELD.

In ejectment for a certain undivided portion of a piece of land, to the whole of which the defendant claimed title, by a prior deed, the plaintiff, to prove the ouster stated in his declaration, introduced a written acknowledgment of the defendant, made at the time of service, that he was in possession of the land demanded, claiming it as his own : Held, that from such acknowledgment, the jury might legally infer the ouster alleged.

An undivided portion of a dwelling-house, the sole and absolute property of the debtor, cannot be taken in execution, and set off to the creditor, although a levy upon a definite part by metes and bounds, would produce great inconvenience to the parties, and enhance the injury to the debtor.

To constitute a breach of the covenant of warranty, an eviction of the grantee, by a lawful title in the person evicting before or at the time of the grant, is indispensably necessary.

Therefore, where *A.* owning land in fee, conveyed it, in 1816, to *B.* in fee, by a deed containing the usual covenants of seisin and warranty, after which no alienation of it was made by *A.* or *B.* ; in 1820, *C.* claiming such conveyance to have been fraudulent, levied an execution on the land as the estate of *A.*, and had it set off to him; in an action of ejectment afterwards brought by *C.* against *B.* for the land, it was held, that as a recovery and consequent eviction by *C.*, would not subject *A.* on his covenant of warranty, *A.* was a competent witness for *B.*

This was an action of ejectment, for so much of a piece of land described in the declaration and the house thereon

as 256 dollars in value bears to the sum of 1350 dollars in value, being an undivided interest of the plaintiff in said land and house, as tenant in common with *Andrew Giddings, Jonathan Giddings* and *Joel Northrop,* jun. An ouster on the 17th of *November,* 1820, was alleged, in the usual form. On the back of the writ, the defendant made and signed the following writing : " *Stratford, November* 28th, 1820. I accept service of this writ, and acknowledge the same to be legally served on me ; and that the same may be entered in court, at any time, during the term to which it is returnable ; and that I am in possession of the land, &c. described in said writ and declaration, claiming the same as my own.

*Ransom C. Canfield.*"

The cause was tried, on the general issue, at *Litchfield, February* term, 1820, before *Chapman,* J.

The plaintiff claimed title to the demanded premises, by virtue of the levy of an execution thereon, in his favour, against *Joel Northrop,* jun. and *Alfred A. Hine,* dated *September* 20th, 1820, for 246 dollars, 4 cents. The return of the officer on the execution, stated, that he levied it " upon a certain dwelling-house, situated on the town street in *New-Milford,* a little northerly of the meeting-house, with about ten rods of ground on which said house stands, as the property of the said *Joel Northrop,* jun., he being the owner in fee thereof." After stating the appointment of appraisers, the return proceeded as follows : " They [the appraisers] did, at said *New-Milford,* on the 16th day of *November,* 1820, upon their oaths, appraise said house and land at 1350 dollars, as the then true and just value thereof to the creditor in said execution ; and the sums mentioned in this execution being 246 dollars, 4 cents, and the lawful fees and charges of executing the same being 9 dollars, 96 cents, both of which sums amounting to 256 dollars, I, on the same 16th day of *November,* 1820, set off on said execution to the creditor within named an undivided proportion or share of said house and land, in the proportion that 256 dollars, the sum total of said execution, and charges of levying the same, is and bears to the said sum of 1350 dollars, the entire value thereof, appraised as aforesaid, in full satisfaction of said execution, and of my fees and all charges thereon : And I caused the creditor to have, and be seised of, all the right, title and interest to the said undivided proportion or share of said house and land so set off as aforesaid, which by law I could give."

HARVARD LAW LIBRARY

*Litchfield,*
June,
1823.

Giddings
*v.*
Canfield.

The defendant claimed title to all the land described in the officer's return, by virtue of a deed thereof from *Joel Northrop*, jun. dated the 29th day of *August*, 1816, expressed to be for the consideration of 3000 dollars, containing the usual covenants of seisin and warranty, and purporting to convey said land to the defendant in fee simple. This deed was duly executed and delivered, and was immediately recorded in the town records of *New-Milford*. At the time of its execution and delivery, *Northrop* owned and possessed the land in fee simple; and there had been no alienation thereof between the date of the deed and the levy of the execution. But the plaintiff claimed, that the deed was made with an intent in the parties to it to defraud the creditors of *Northrop*, of whom the plaintiff was one, and was, therefore, void as against the plaintiff's levy. To establish this claim, the plaintiff introduced several witnesses. The defendant, on his part, claimed, that the deed was made upon a valuable consideration, and in good faith, without any intent to defraud the creditors of *Northrop*. To prove this, the defendant offered to read in evidence the deposition of *Northrop*, which was duly taken; to the admission of which, the plaintiff objected, on the ground that *Northrop* was interested in the event of the cause. The judge sustained the objection, and rejected the deposition.

The only evidence of any ouster or disseisin committed by the defendant, was that which appears by the defendant's acceptance of service of the writ, in which he stated, that he was in possession of the demanded premises, claiming them as his own. The defendant claimed, that such admission did not, in point of law, constitute or amount to a disseisin of the plaintiff by the defendant; and prayed the judge so to instruct the jury. The judge, however, instructed the jury, that they might thence infer an ouster by the defendant.

In the course of the trial, the defendant objected to the introduction of the execution, as evidence of any title in the plaintiff, on the ground that it was levied on a part of the defendant's interest in the land and house; whereas it should have been levied upon all his interest in a part thereof, sufficient to satisfy the execution. But the judge admitted the evidence in question; and instructed the jury, that when an execution cannot be levied on a part of a dwelling-house, by metes and bounds, without great inconvenience to the parties, and without being more injurious to the debtor than it

would be to levy it on an undivided portion thereof, the law permits the creditor to levy upon, and cause to be set off, such undivided portion, as will satisfy his execution.

The plaintiff having obtained a verdict, the defendant moved for a new trial, on the ground that the judge, in the decisions before-mentioned, and in his charge to the jury, mistook the law.

*Litchfield,*
*June,*
*1823.*

*Giddings*
*v.*
*Canfield.*

*Benedict* and *Sherman,* in support of the motion, contended, 1. That the acknowledgment, made by the defendant, on the back of the writ, did not constitute, or furnish any evidence of, a disseisin before suit brought. In the first place, as the defendant was a tenant in common with the plaintiff, his possession was strictly lawful; and it could be no evidence of an ouster of the plaintiff, until the defendant had done some act obstructing the plaintiff in the occupation of the property with him. No overt act whatever was admitted. But secondly, if this were evidence of an ouster at any time, it would not prove an ouster *before suit brought.* The words of the acknowledgment are in the present tense— " *I am* in possession," &c. referring only to the time of making the acknowledgment. This admission of the defendant, together with an annunciation by him, of his intention to hold, made after the commencement of the action, clearly did not tend to prove a *previous* ouster.

2. That the execution, with the officer's return thereon, was no evidence of title in the plaintiff to the demanded premises. The law requires, that where, from the nature of the case, partition can be made, the levy must be in severalty, and not in common; and this may be done in every case, except where it is impracticable from the nature of the *title.* Where the creditor has a *right* to levy in common, he is *bound* to do so. Now, the return in question, discloses no reason from the nature of the case, surely none from the nature of the title, why the execution could not be levied in the usual way. There was *land,* as well as a *house,* to be levied on; and there is nothing to shew, that the land was not sufficient to satisfy the execution, without touching the house. But there is no difficulty in making partition of a dwelling-house. It is the constant practice of every judge of probate to do it. *Stat. Conn.* 56. *Pullen* v. *Birkbeak, Carth.* 453. *Earl of Clarendon & al.* v. *Hornby,* 1 *P. Wms.* 446, 7. *Fenny* d. *Masters* v. *Durrant,* 1 *Barn. & Ald.* 40. 2 *Phill. Evid.* 204, 5. *Taylor* v.

*Townsend*, 8 *Mass. Rep.* 411. 418. By the direction of the judge to the jury, the right of the creditor to levy in common, is made to turn on the *convenience* to the debtor ; and this convenience must be decided by the jury ; and different juries will decide differently. This course will leave titles in a very uncertain state. The genius of our law requires, that our titles shall appear of record ; but according to the charge, the title must depend upon a fact *dehors*, viz. the convenience of the debtor.

3. That the deposition of *Northrop* was improperly rejected ; he having no interest in the event of the suit. The title, at the time of the conveyance, was admitted to be in him ; and no alienation had been made, by him or *Canfield*, prior to the plaintiff's levy. *Canfield* could never sue him on the covenants in the deed ; because, in the first place, *Northrop* owned the land ; and because, in the next place, if the deed could be vacated on the ground of fraud, *Canfield* was a party to it. If *Northrop* was interested at all, it must then be on the ground that *Canfield* might convey the land hereafter, and thus render *Northrop* liable to his assignee upon the covenants in this deed. This, if it could be done, would make the interest future and contingent ; not, as it must be to disqualify a witness, present, certain, and fixed. 1 *Phill. Evid.* 40. and cases cited *ibid.* Besides, any deed which *Canfield* could give, would be void as against the plaintiff's judgment : Or, if unaffected by it, good in the hands of a *bona fide* purchaser. But however these principles may be, as *Northrop's* title is admitted, and both parties claim under it, he can never be liable to any one, on the covenants, on the ground of another title superior to his.

*D. S. Boardman*, contra, contended, 1. That the admission of the defendant, that he was in possession, claiming the property as his own, was evidence of an ouster sufficient to go to the jury. *Doe* d. *Hellings* & ux. v. *Bird*, 11 *East* 49. The object of this admission undoubtedly was, to present the question of title in the plaintiff as the only one to be tried ; otherwise, the admission was nugatory.

2. That the direction to the jury, with respect to the form of the levy, was unexceptionable. The judge left it to the jury to enquire whether the execution could, or could not, be levied in severalty, without great inconvenience to the parties and injury to the debtor ; and they have decided the

question. The verdict cannot now be disturbed, unless the law is so, that in *all cases* executions must be levied *by metes and bounds*. But to levy by metes and bounds, so as to give the creditor a part, which shall be of any value to him, without rendering the residue of no value to the debtor, is often impossible. This will generally be the case with regard to dwelling-houses ; and can hardly fail to be the case with regard to manufactories, grist-mills, saw-mills, &c. It is no answer to say, that *partition* may be made of a dwelling-house, or of a mill. There is a wide and very important difference in the cases. Partition is made, by disinterested and impartial persons, appointed for that purpose ; who will discharge their duty in such a manner as to produce the least inconvenience to the parties, and the least injury to the debtor consistent with the rights of the creditor. Will an exasperated creditor, with the power of levying where he pleases, do this? Can it be expected of him? The rule adopted, by the judge, in this case, is the only one, which, in its operation, will do equal justice to the creditor and debtor. The case of *Jessup* v. *Batterson, 5 Day* 368. establishes the principle, that there may be cases, where a levy in common will transfer a valid title.

3. That *Northrop* was an interested and incompetent witness ; because he, in the event of a recovery by the plaintiff, would be liable to the defendant, on the covenant of warranty. This covenant is, in its nature, *prospective.* It provides, that the grantee shall not be disturbed, by any title, derived *by, through,* or *under* the grantor. In *England,* it is rarely, and perhaps never, the case, that a grantee can be disturbed, by a title other than one existing in some third person *prior* to the grant. But by means of our statutes respecting the recording of deeds and the levying of executions upon land, it is otherwise here. Under our system, cases of eviction by a title *subsequently* perfected, frequently occur ; *e. g.* where the land is merely attached, but no execution obtained, at the time of the conveyance ; or where the land is attached after the conveyance, and a copy is left in service before the deed is recorded ; or where land is conveyed *bona fide* to *A.,* and afterwards a deed of the same land is made to *B.,* without knowledge in *B.* of the former deed. There is no reason why an evicted grantee, be the eviction when it may, should not look to his covenant for recompense.

*Litchfield,*
June,
1823.

*Giddings*
*v.*
*Canfield.*

The general principle, that a grantor with warranty can-
not be a witness in a suit involving the question of title, has
been abundantly established. *Abby* v. *Goodrich*, 3 *Day* 433.
*Swift's Evid.* 59, 60.  2 *Roll. Abr.* 685.  *Jackson* d. *Cald-*
*well* v. *Hallenback*, 2 *Johns. Rep.* 394.  *Swift* v. *Dean*, 6
*Johns. Rep.* 523.  *Heermance* v. *Vernoy*, 6 *Johns. Rep.* 5.
*Smith* v. *Chambers*, 4 *Esp. Rep.* 164.  *Phill. Evid.* 47. n.
(*Dunlap's* ed.)

HOSMER, Ch. J.  Facts which shew that the defendant held
adversely, by a denial of the plaintiff's right to possess, or
claimed the whole of the premises for himself, are sufficient
evidence of an actual ouster.  *Doe* d. *Fisher &* al. v. *Prosser*,
*Cowp.* 217.  *Doe* d. *Hellings* & ux. v. *Bird*, 11 *East*, 49.

The defendant claimed all the land demanded, by deed
from *Joel Northrop* jun., executed four years before the levy
of the execution, under which the plaintiff derives title.  By
an acknowledgment in writing, the defendant admitted due
service of the plaintiff's writ, and, at the same time, that he
was in possession of the demanded land, "claiming it as his
own."  On this admission only, the judge instructed the jury,
that they might infer an ouster by the defendant.

It is said, that this admission furnishes no evidence of a
disseisin, but only of a possession not adverse to the plain-
tiff's claim ; and in all events, that it is no acknowledgment of
an ouster *before* the service of the plaintiff's writ.  This is a
construction founded on the letter of the transaction, utterly
regardless of its spirit and intent ; and stamps upon it absur-
dity, by reducing it to a nullity.  That the defendant claimed
to possess the land in question adversely, is demonstrated, by
his having become the purchaser of it, under a deed from *Jo-*
*el Northrop* jun., the former owner ; and that he intended to
admit a disseisin *before* the suit brought, is indisputable, be-
cause he, for a number of years anterior, had occupied the
land, claiming to be the owner ; and because the admission
was intended to be of this extent, or to be *no admission* of a
material point between the parties.  It is uncontrovertibly
clear, that they, to prevent unnecessary trouble and expense,
adopted this mode of removing from controversy the question
of the defendant's adverse possession, and to restrict the en-
quiry solely to the plaintiff's title.

It was agreed, at the trial, that the land described in the
return on the plaintiff's execution, in the year 1816, was the

property of *Joel Northrop* jun., and that *Northrop* granted it to the defendant, in the same year, by a deed duly executed and recorded. It was further agreed, that this land had not been aliened, by the defendant. On the 23d of *September,* 1820, upon the supposition that the above-mentioned deed was fraudulent in respect of creditors, the plaintiff caused an execution to be levied on the premises ; and instead of setting off a definite portion of the property, the officer took an undivided proportion of the dwelling-house. Whether this levy was legal, and invested the plaintiff with a title, was the second question raised in this case. The jury were instructed, that " where an execution cannot be levied on a part of a dwelling-house, by metes and bounds, without great inconvenience to the parties, and without being more injurious to the debtor than it would be to levy the same on an undivided portion thereof, the law permits the creditor to levy on, and cause to be set off, such undivided portion as will satisfy the execution." This principle, in my judgment, is in opposition to the established law on the subject in question ; to the constant and immemorial usage in this state ; and to private justice and public convenience.

The statute in force, at the levy of the plaintiff's execution, (*a*) was expressed in very general terms, and gave the creditor title, if the process was *duly levied* on the property of the debtor, and duly recorded. The *English* law concerning an *elegit,* by stat. *Westminster* 2. *c.* 18. (2 *Bac. Abr.* 710. *Gwil.* ed.) is expressed in terms equally general ; and the decisions under this act are directly applicable, on the principle of strict analogy. On the writ of *elegit* lands and houses are always set off by metes and bounds. 2 *Bac. Abr.* 711. *Com. Dig. tit.* Execution. C. 14. *Hut.* 16. 1 *Brownl.* 38. *Pullen* v. *Birkbeak, Carth.* 453. *Dalton's Shff.* 135. *Den* d. *Taylor* v. Earl of *Abingdon, Doug.* 473. *Fenn* d. *Mosters* v. *Durrant,* 1 *Barn.* & *Ald.* 40. It was said, by Lord *Holt,* in *Pullen* v. *Birbeak,* that " if upon an *elegit* the sheriff delivereth the moiety of a house *without metes and bounds,* such return is ill." And in *Den* d. *Taylor* v. Earl of *Abingdon, Buller,* J. when commenting on the argument of one of the counsel, said : " In short, the writ could not be executed according to his idea, but by delivering *an undivided moiety.* Yet, most clearly, that is not the meaning of the statute ; for *it is agreed,* the

(*a*) *Stat. Conn.* 282. ed. 1808.

*Litchfield,*
*June,*
*1823.*

Giddings
*v.*
Canfield.

moiety extended must be set out *by metes and bounds.*"  A very modern author of celebrity, (*b*) when writing on the subject in question, has observed, " The sheriff must state in his return, that he has set out a moiety *by metes and bounds ;* otherwise, the return will be void."

By ancient and immemorial usage in this state, executions have been levied on a definite portion of the debtor's property ; and this, as a general principle, is admitted to be law, in *Jessup* v. *Batterson,* 5 *Day* 368.  In this case, a new rule was established, *by way of exception,* that if several distinct executions are levied, by separate creditors, of more than sufficient value to appropriate the whole of the property levied upon, an undivided proportion may be set off on each of them.  The debtor having received the value of all the lands taken, could have no interest in the mode of levy ; and the agreement of the creditors to become tenants in common in this novel manner, was considered as being free from exception.  This is the only deviation, which has ever been sanctioned, from the common usage of levying executions on definite portions of property, unless in cases of strict necessity.  Such were *Hinman* v. *Leavenworth,* 2 *Conn. Rep.* 244. n. and *Starr* v. *Leavitt,* 2 *Conn. Rep.* 243. in which cases it was decided, that the creditor of one tenant in common cannot levy upon and have set off to him a certain part of the common estate by metes and bounds.  The determinations were founded on this conclusive reason, that the appropriation of a specific part of the common estate for the debt of one tenant in common, would deprive his fellow tenant of a part of *his* property, by making a partition of the estate, without his consent or cooperation.  It is strictly incompatible with the nature of this estate, because it would be unjust, and in violation of the right of property, to levy upon and set off a distinct part of it, by metes and bounds ; and to the necessity arising from these considerations the creditor must yield.  *Lex neminem cogit ad impossibilia.*

To some of the principles advanced by the judge, who delivered the opinion of the court, in the case of *Jessup* v. *Batterson,* and which are entirely *obiter,* I cannot assent.  It was said, that " there are undoubtedly cases, where it is incompatible with the nature of the property to set out each part in severalty."  I have admitted, that in cases of strict incompat-

(*b*) 2 *Phill. Evid.* 204.

*Litchfield,*
June,
1823.

Giddings
*v.*
Canfield.

ibility, such as those already mentioned, the above observation is correct. In the illustration of his remark, it was further said, that "it would often be the case in setting off a dwelling-house." The judge then asserts, that "the propriety of the levy, as to this, must depend on the nature of the property, and the circumstances of the case." No principle is stated, from which it can be known when this novel mode of levying without setting off the property by some definite marks, is admissible. It is said, however, that "if no peculiar injury is designed or effected, there seems to be no imperious reason why such levy should not be made." To this I cannot subscribe. In every case, there is an imperious reason for adhering to the law as established, and for casting the burden of shewing an exception on the person who would avail himself of it. In the case before us, the judge on the circuit placed the legality of the levy on the ground of preventing great inconvenience to the parties and injury to the debtor, of which the jury at the trial were to be the judges. Of the numerous objections to the principle advanced, I will state a few. First, there is nothing in the nature of a dwelling-house, which requires this departure from established law and usage. The property, without depriving the debtor, or any other person of his rights, is susceptible of a distinct appropriation; and no necessity exists to countenance this novelty in practice. If some inconvenience may arise to individuals, in a particular case, (and what rule will not furnish them?) the general convenience arising from a certain rule, will more than counterbalance it. Secondly, the principle now advanced would destroy all confidence in the rule of levy heretofore adopted. The creditor must not play fast and loose; but if inconvenience in the particular case requires it, the levy, upon the principle advanced, *must* be on an undivided proportion. There is no criterion, by which it can be ascertained when the levy should be by metes and bounds, and of consequence, it cannot be known, until a jury shall pronounce upon it, whether the levy is good or bad. To the *discretion* of this tribunal, at a day posterior to this event, the question must be submitted; and until a verdict ascertains the point, the character of the levy is merely conjectural. No creditor of either party, until the test, or adjudication, is furnished, can know, whether he may attach or levy on the property as belonging to his debtor. The collection of his debt must be suspended; or, what is more probable, expen-

PHILIP LAW LIBRARY

*Litchfield,*
*June,*
*1823.*

*Giddings*
*v.*
*Canfield.*

sive litigation will be the result. Thirdly, the plaintiff, with his execution of one hundred dollars only, may levy on a dwelling-house of the value of thousands, and having become tenant in common, take possession of the entire mansion, and put in a noxious family. And lastly, to shew the absurdity of this new rule of levy, either party may compel partition at pleasure, and bring the levy back to the original principle of metes and bounds. Earl of *Clarendon & al.* v. *Hornby,* 1 P. *Wms.* 446. *Parker* v. *Gerard, Amb.* 236. 1 *Madd. Chan.* 198, 9. The expectation of perfect freedom from inconvenience, by any rule on the subject of levying executions, is vain; but confident I am, that the most just and convenient mode of proceeding, is the one established. A plain rule, perfectly definite and easy of practice, has long been sanctioned; and although the operation of it may, in some instances, be undesirable, its general result is conformable to justice.

The deposition of *Joel Northrop,* jun., the grantor of the premises to the defendant, was offered in evidence, and, on the plaintiff's objection, rejected, on the ground of interest in the event of the suit.

A good title to the land in question *Northrop* is admitted to have had, at the time of his deed executed to the defendant, and that no alienation of it had been made by him or *Canfield,* prior to the plaintiff's levy. It is insisted, notwithstanding, that if the plaintiff recover in this action, the defendant's eviction will lay a just foundation for a suit against *Northrop,* on his covenant of warranty. The force of the objection to the proposed witness is dependent entirely on the legal import and effect of the preceding covenant. By this contract, *Northrop* assured the defendant, that he had a valid title to the property conveyed, *existing at the time of the conveyance ;* and that, by reason of a deficiency in this particular, he should not be lawfully evicted. The covenant, if *literally* construed, would extend much further than this, and comprise an eviction, even by a tortious entry and expulsion. The covenant of warranty, however, has, long since, received a construction not conformable to its letter, but to the spirit and intent of it; and an eviction, to subject the covenanter, must be *lawful,* and by *elder* or *superior title.* In the case of *Wotton* v. *Hele,* 2 *Saund.* 175. this point was adjudged ; and, as was remarked by the learned editor of *Saunders,* in a note to that case, (*p.* 181. *a.*) it "has ever been considered a leading

authority, to shew, that it is necessary, for the reasons therein given, that the plaintiff should state in his declaration, in some manner, that the person evicting had a lawful title *before*, or *at the time of, the date of the grant to the plaintiff.*" The same principle was established in *Noke's* case, 4 *Co. Rep.* 81., in *Kirby* v. *Hansaker, Cro. Jac.* 315., and in *Mosse* v. *Archer*, 3 *Mod.* 135. and it is too late even to be questioned. Now, the eviction of *Canfield* in the plaintiff's suit would not be evidence that *Northrop* had not a lawful title to the premises, at the time of his deed to the defendant; and the admitted facts in the case incontrovertibly shew, that, at that time, he was the unquestionable owner of the land. His covenant, then, has been kept, and not broken; and the defendant's eviction would furnish no ground of suit against him. So far from this, the plaintiff's claim, as the return on his execution must ever evince, is founded on the validity of a title in *Northrop*, as late as the year 1820. The ground of it really is, that *Northrop* had a legal title to the premises, and, so far as respects his creditors, has never parted with it. In the event of the suit before us, I am clear that he had no interest; and that his deposition should have been admitted.

BRAINARD, J. was of the same opinion.

CHAPMAN, J. The principal question, in this case, is, whether the property levied upon was of such a nature, as that by the requirements of law, it must be taken and set off, by *metes and bounds*. The creditor has levied on an undivided proportion; and he has done so, because he supposed, and the jury have so found, that he could not levy and set it off, by metes and bounds, without doing a serious injury to the debtor.

It is admitted, that the right, which the creditor has to levy upon real estate, is derived from statute; and if that admits of no other mode of levying, than by *metes and bounds*, the levy in question, is irregular and void. It should be kept in view, that the court charged the jury, that the validity of the levy depended on the fact, that a levy by metes and bounds, would greatly prejudice the debtor. That the latter mode must be adopted, in all cases, where manifest injustice would not be done, was admitted.

If the statute in question, had not received a construction, extending beyond the words of it, and sufficiently extensive

HARVARD LAW LIBRARY

*Litchfield,*
*June,*
*1823.*

*Giddings*
*v.*
*Canfield.*

to embrace the present case, doubts might be entertained re-specting the validity of the levy. The statute, in the terms of it, gives no right to levy upon lands, holden by a tenant in common, by setting off an undivided proportion of it; and yet the supreme court have repeatedly decided, that such a mode of levying, is not only admissible, but that a levy by metes and bounds, would be void. So, a levy on a part of an equity of redemption, and setting it off by metes and bounds, has been holden to be void. In the first case, the court pro-ceeded upon the ground, that the creditor could not make himself either co-tenant with the debtor, or his co-tenant in any particular part; that a levy, by metes and bounds, would produce that effect; and that the inconvenience would be so great, that such a levy would be invalid.

It does not appear, that, in those cases, it occurred to the court, that the statute warranted no mode of levying, but by metes and bounds. They seem to have supposed, that a mode of levy, by which the execution was satisfied, and with the least injury to the debtor, if not within the letter, was within the meaning and equity of the statute.

By the common law, dower must be set off, by metes and bounds; but where the subject matter is of such a nature, as to require a different mode, the law admits of it; as in the case of setting off a part of a grist-mill. In such case, a proportion of the time, or of the toll, is set off.

I need not now insist on the inconveniences, which will follow, if a strict construction be given to the statute, in this case; because they will present themselves to all, on the least reflection. I need not mention, the cutting up of dwel-ling-houses, into a thousand distinct parts, by as many differ-ent creditors; nor the little value of the property thus ac-quired, to the creditor himself. In some cases, an inch square, or any less quantity, (according to the amount of the debt) must be set off, from the top to the bottom of the house.

If the statute must receive a literal construction, grist-mills, saw-mills, as well as factories of every kind, (if they can be levied upon at all,) must be subject to the same rule. They can be taken only by metes and bounds, because the statute mentions no other mode of taking them. The cred-itor, who can embrace the water-wheel within his levy, must, therefore, deem himself fortunate; since this would

give him a controul over all subsequent levying creditors, as well as the debtor, if any part should be left to him.

I am therefore of opinion, that, under the circumstances of this case, the levy was valid.

PETERS and BRISTOL, Js. not having been present when the case was argued, gave no opinion.

New trial to be granted.