## LEE and others *against* HINMAN.

Where several executions, in favour of as many different creditors, were levied, at the same time, on a piece of land, and the whole of the debtor's interest therein was taken, and, by agreement of the creditors, an undivided part thereof was set off to each, in proportion to the amount of his execution; it was held, that such creditors were thereby vested with a valid title to the land as tenants in common.

This was an action of ejectment, tried at *Litchfield, August* term, 1825, before *Peters,* J.

The plaintiffs claimed title to the demanded premises, by virtue of the levy of five several executions, one in favour of each of the plaintiffs, against one *Amasa Hinman.* In support of this title, the plaintiffs, after proving the judgments, offered in evidence the executions, which were in common form, and the returns of the officer thereon. All the executions were put into the hands of the same officer, who levied them, at the same time, on the same piece of land; and the officer's returns were the same, *mutatis mutandis.* One of them was as follows: "*Litchfield* county, ss. *New-Hartford, September* 3rd, 1824. The within named debtor having failed to pay this execution, and the lawful charges thereon, and not being able to find any personal estate, nor the body of the said debtor within my precincts, and none being shewn me by him, by virtue hereof, and by direction of the creditor herein, on the day above-mentioned, I levied this execution on one piece of land and a barn standing thereon, [describing the land by metes and bounds] whereof the debtor was seised and possessed in fee; [the appointment and qualification of the appraisers were then stated,] and said appraisers, after viewing said land and barn standing thereon, then and there appraised the same at the sum of 219 dollars, 46 cents, as the true and just value thereof, of which valuation they made a certificate under their hands in writing, and delivered the same to me; and the sum mentioned in this execution being 26 dollars, 65 cents, and the lawful charges of executing the same being 4 dollars, 79 cents, amounting to the sum of 31 dol-

*Litchfield,*
*June,*
*1826.*

*Lee*
*v.*
*Hinman.*

lars, 44 cents : I, therefore, on the same day, set off to the creditor in this execution one undivided part or portion of said described premises, as the sum of 31 dollars, 44 cents, bears to the sum of 219 dollars, 46 cents; having, this day, set off the whole of the said described premises on this and other executions against said *Amasa Hinman,* and the whole being set off undivided, by agreement of all the creditors therein ; which is in full satisfaction of this execution, and my fees, and all charges thereon." All the executions, with the fees and charges, amounted to the sum of 219 dollars, 46 cents. To the admission of this evidence the defendant objected; and the judge excluded it. The jury thereupon returned a verdict for the defendant; and the plaintiffs moved for a new trial.

*W. G. Williams* and *J. W. Huntington,* in support of the motion, after admitting, that in general, the levying creditor must take his estate in severalty, by metes and bounds, both here and in *England,* contended, that to this rule there are exceptions, one of which is this very case, sanctioned, by the unanimous opinion of this Court, in 1812, in *Jessup* & al. v. *Batterson,* 5 *Day* 368. That case and the present resemble each other in every essential particular. In that case, there were five separate creditors; so there are here. There the whole demanded premises were appraised; so they were here. There the executions amounted to the whole appraised value; so they do here. There they were levied at the same time, by the same officer; so they were here. There the premises were set off to each creditor, not by metes and bounds, but an undivided part or portion thereof, in proportion as his execution, with costs of levy, bore to the appraised value of the whole; and precisely the same thing was done here. There the object of the several creditors was, to create a tenancy in common among themselves in proportion to the amount of their several claims; here the object was precisely the same. If the case of *Jessup* v. *Batterson* is now law, in *Connecticut,* there is an end of this objection.

First, has it been overruled ? The only case relied upon for this purpose, is *Giddings* v. *Canfield,* 4 *Conn. Rep.* 482. So far from overruling the case of *Jessup* v. *Batterson,* it is obvious, that the Chief Justice, in giving the opinion of the majority of the Court, studiously avoided shaking the authority of that case as a precedent for similar cases. Besides, any opinion evincing

a wish to overrule it, would have been *obiter.*  The two cases bear no analogy to each other: they are *toto cœlo* different.

Secondly, it may be claimed, that the revised statute, under which the executions in this case were levied, is different from the former statute, which governed the levy in *Jessup* v. *Batterson;* the present law requiring the land to be set off " by metes and bounds."  But this expression in the statute has introduced no *new* rule on the subject.  The construction of our old statute, and that of a similar one in *England,* has always been the same as though these words were contained in them.  4 *Conn. Rep.* 489. 490.  1 *Archb. Pr.* 272, 3.  By " metes and bounds" is meant such a designation of the property as that the debtor may know what is taken from him.

From the mode of levy adopted in this case great conveniences may result to the creditors, without the possibility of injury to the debtor.  It is the policy of our law to enable creditors to satisfy their claims out of the *estate* of their debtors; and for this purpose, real estate is made a fund ; which ought so to be taken, as that the creditor may enjoy it in the most beneficial manner, while at the same time he interferes with no other rights of the debtor.  In the present case, the creditors believed it was for their interest to have the estate set off in common ; and many reasons may be assigned for the preference given to this mode.  As the *whole* estate was appraised and taken, and amounted to no more, at its just valuation, than the executions levied upon it, the debtor has sustained no injury.  He has had an appraisal of *all* the land, according to the forms of law ; and it has *all* been applied to the payment of his debts.  Why, then, should he complain ?

*P. Miner* and *R. Mills,* contra, contended, That real estate set off on execution, must be set off in severalty, and particularly described by metes and bounds, in all cases where the debtor had a title in severalty, and where, from the nature of the subject, it was capable of being so set off.  *Stat.* 57. *tit.* 2. *s.* 76. *Giddings* v. *Canfield,* 4 *Conn. Rep.* 482.  *Eells* v. *Day,* 4 *Conn. Rep.* 95, 101.  *Pullen* v. *Birbeak, Carth.* 453.  *Sparrow* v. *Mattersock* & al. *Cro. Car.* 319.  *Den* d. *Taylor* v. Lord *Abingdon, Doug.* 473. 475, 6.  The debtor and his other creditors have an important interest in the levy of executions on real estate, as well as the levying creditor.  It is very desirable that levies should be made with such certainty, that all concerned may

see from the return what each creditor has taken.   For this purpose the returns are required to be recorded.   But if several creditors may spread their executions at once over an estate in severalty,  and convert it into a tenancy in common  among themselves, it will be difficult to find from the record where the title is.

In this case, there was no  necessity, from the  nature of the property, of setting it off otherwise than by metes and bounds. Here was no mill, nor even a house.   The subject of the levies, was, " a certain piece of  land with a barn  standing thereon." Was there any difficulty in any creditor's taking a  definite part of this property in severalty ?

The only authority relied on, in support of the  levy in question, is the case of *Jessup & al*. v.  *Batterson*, 5 *Day* 368.   In the first place, the levy in that case was made under a different statute from the one in question.   By the terms of the statute then in force, a  valid title was acquired, if  the execution was " duly served." *Stat.* 282. (ed. 1808.) *tit*. 63. *s*. 6.   The legislature have since required, in  positive and explicit  terms, that the land be set off " by metes and  bounds ;" and in this they must have had some object.   The new law was either explanatory or remedial.   If explanatory, the legislature shew what *ought* to have been the  construction of  the former law, *viz.* contrary to  the decision in *Jessup* v.  *Batterson*.   If remedial, they shew with equal clearness, what the rule is to be in future. Secondly,  the case of *Jessup* & al. v. *Batterson* was overruled, by this Court, in *Giddings* v. *Canfield*, 4 *Conn. Rep.* 482.   That was a stronger case in favour of the levy  than this.   The subject was a dwelling-house ; and the jury found, that a levy upon a definite part by metes and bounds, would  produce great inconvenience to the parties, and would  be more injurious to the debtor, than a levy on an undivided portion thereof  would be ; and yet the Court decided, that a valid title could be acquired by the former mode alone, and as the latter mode, in that case, had been adopted, the levy was void.

LANMAN, J.   The defendant's objection to the evidence offered, was founded, 1st, upon the  statute law of this state, (*Stat.* 57. *tit*. 2. *s*. 76.) in which, he contended, the time when, and the manner in which, executions might be levied upon  land, were exclusively  designated ; that by a long course of  practice and usage upon it, a practical construction was given to it ; and that

a consolidated levy could not be made, nor an estate in common be so created, in several levying creditors, by such a mode of levy : 2ndly, That as by the common law, lands could not be taken by execution, so any statute which subjected them to be levied upon for debts, ought to receive a limited and strict construction ; and that each creditor, in the case in question, should have, severally and independently, levied, and, by "metes and bounds," set off, a distinct portion of the land, upon his execution, and not in common and undivided.

The object of the statute is, doubtless, to give just satisfaction to the creditor for his debt, without injury to the debtor or other persons ; and such intention of the legislature should be studiously carried into effect. The particular provisions of the act are intended for the benefit of the creditor, in order that the debt may be satisfied out of the debtor's estate. It would be but a fair and consistent principle of construction to extend to this statute, then, to allow creditors, for whose benefit it was made, to unite in taking the debtor's land, in such time and manner, not incompatible with the terms of the statute, as would be most conducive to his interest, and in strict conformity to the justice due him.

This is done, most manifestly, when the levy of divers executions is made, at the same time. One set of appraisers, as the case may be, will be enabled, on one view, to estimate the land, and by considering it in an integral character, give it a more liberal and yet just value, than could possibly be done, if it were subdivided into fractions, as numerous as the executions.— When by consent and agreement of creditors, this can be done, with less expense to an unfortunate debtor, it is altogether the most humane, and least ruinous course, which he could desire. It is not perceived, when the debtor's *whole interest* in the land is taken, even if such were not the result, in the saving of expense and the litigious adjustment of conflicting claims, how this objection can be raised by him. Surely, *he* is not made, by such levy, the unwilling tenant in common with his creditor. Surely, *he* has no interest, which can be injuriously affected, by the common title and interest of his creditors.

This point was well considered, and so holden in the case of *Jessup* v. *Batterson,* 5 *Day,* 368. where it is said, "the whole property is taken at the same time, by creditors, who choose to hold as tenants in common ; and as nothing is left in the debtor, neither he, nor any person under him, can have reason to com-

*Litchfield,*
June,
1826.

Lee
*v.*
Hinman.

*Litchfield,*
June,
1826.

Lee
*v.*
Hinman.

plain." And in *Swift's Dig. vol.* 1. *p.* 156. it is laid down, "That where two creditors attached land, at the same instant of time, and caused their executions to be levied in due time, it was holden, that they took moieties of the land."

But, if the soundness of the principle could reasonably have been questioned prior to the case of *Jessup* v. *Batterson,* the doctrine was fully recognized, in the opinion of the court, given by the learned Chief Justice *Hosmer,* in *Giddings* v. *Canfield,* 4 *Conn. Rep.* 482. wherein he admits, that although by ancient and immemorial usage, in this state, executions have been levied on a definite portion of the debtor's property, and as a general principle, this is admitted to be law, yet in *this case,* (*Jessup* v. *Batterson,* 5 *Day* 368.) a new *rule was established by way of exception,* "That if several distinct executions are levied, by separate creditors, of more than sufficient value to appropriate the whole of the property levied upon; an undivided proportion may be set off on each of them."

I am of opinion, as well from the strong reason and justice of the case, which might have governed, as from the clear precedent in law, which did govern, the levy in question, that it was valid.

The evidence ought to have been admitted; and I advise a new trial.

The other Judges were of the same opinion.

New trial to be granted.