## Jones *against* Warner.

In *September*, 1829, *L.*, of *East Haddam*, in this state, addressed an order to *J.*, in *New-York*, for 40 tons of *Lackawanna* coal, at 7 dollars *per* ton, to be delivered at the landing at *Rondout*, on *Hudson* river. *P.*, the master of a vessel, was the bearer of the order, and delivered it to *W.*, the clerk of *J.* in *New York*. *W.* thereupon gave *P.* an order in these words : "Be pleased to load sloop *Invincible*, Capt. *P.* with 40 tons *Lackawanna*, for my account, and fill bill of lading, as *per* agreement " *P.* proceeded with this order to *Rondout*, and delivered it to *W.*, agent of the *Delaware & Hudson Canal Company*, who severed the coals from a larger quantity belonging to *J.*, weighed them and shipped them on board the *Invincible* ; and *P.* thereupon gave a bill of lading in the following terms : " Received of the *Delaware & Hudson Canal Company*, on board the sloop *Invincible*, whereof I am master, 40 tons *Lackawanna* coal, which I promise to deliver to *J.*, or order, at *New-York*, he paying freight for the same." *P.* proceeded with the coals directly to *East-Haddam*, without stopping at *New-York*. The coals not being paid for according to agreement, and *L.* becoming insolvent, they were attached on board the vessel, by one of his creditors. It was the usual course

of *J's.* business to have coals consigned and shipped to himself in *New-York*, when they were not paid for, on delivery of the order for them. In an action of trover brought by *J.* against the attaching officer for the coals, the defendant offered parol testimony to prove, that *W.*, at the time of writing the order for the coals, verbally agreed with, and authorized *P.*, after receiving them, to proceed with them directly to *East-Haddam*, without stopping at *New-York.* Held, 1. that *W.*, the clerk, had no authority to make the agreement offered to be proved, the implied authority of an agent being limited, by the usual course of dealing in the business in which he is employed; 2. that the testimony offered went to contradict the bill of lading, and was, therefore, inadmissible; 3. that consequently, the property in the coals did not pass from *J.*, and he was entitled to a recovery.

*Middlesex,*
July, 1835.

Jones
*v*
Warner.

THIS was an action of trover for 40 tons of *Lackawanna* coal.

The cause was tried at an adjourned term of the superior court, at *Haddam*, in *November*, 1834, before *Church*, J.

On the 16th of *October*, 1832, the defendant, as constable, attached and took the coals mentioned in the declaration, at the suit of the *East-Haddam* Bank, against *H. & S. Lee.* At this time, the coals were the property of the plaintiff, unless they had been by him transferred to *H. & S. Lee*, who failed a short time before the attachment. When the coals were attached, they were on board a sloop, lying in *Connecticut* river, at *East-Haddam*, called the *Invincible*, of which *Henry T. Punderson* was master; he having arrived with the sloop and coals at *East-Haddam* on the same day.

The defendant claimed, that *H. & S. Lee* had purchased the coals of the plaintiff, and that the property therein was, at the time of the attachment, fully vested in them; that *Punderson* was authorized to deliver, and had in fact delivered, the coals, to them; or that, if he had not then done it, the coals had come lawfully into their possession before the plaintiff exercised any right of stoppage *in transitu*, if any such right he ever had.

The plaintiff claimed, that he had never sold the coals to *H. & S. Lee*, or transferred to them the property therein; that *Punderson* had no right to deliver the coals to them; and that if he had such right, and the plaintiff had transferred the property in the coals to them, the plaintiff had the right of stoppage *in transitu*, and had exercised that right in respect to the coals in question, by demanding them of the defendant before

they came to the possession of *H. & S. Lee*, and before the commencement of this suit.

The defendant, to prove his claim, introduced two letters from *H. & S. Lee* to the plaintiff, and also two letters from the plaintiff to them. In the first letter, dated *September* 18th, 1832, *H. & S. Lee* proposed to the plaintiff to take 30 or 40 tons of *Lackawanna* coal, at 7 dollars per ton, to be delivered at the *Rondout* landing. Their next letter, dated *September* 29th, 1832, was as follows : " We wrote you, some days since, that we should accede to your terms for 40 tons of coal, and should send a vessel therefor. We have now a sloop, Capt. *Punderson*, to whom you will please give an order, that he may get the coals at *Rondout*, without delay. You can draw on us at three days' sight, for the amount of the bill, through the *East-Haddam* Bank, or direct it to be paid otherwise." On the 8th of *October*, 1832, the plaintiff replied as follows : " Your favour of the 29th *ult.* was received, and an order given Capt. *Punderson*, on the 5th *inst.*, for 40 tons of *Lackawanna* coal. You remark, I may draw on you for the amount, through the *East-Haddam* Bank, or direct it to be paid otherwise. Our rule is, to receive the amount when the order is given. We dispensed with it, in your case. Will you please to remit a check on one of our banks, or on your correspondent here, to my order, for the amount."

On the 22nd of *October*, 1832, the plaintiff again wrote to *H. & S. Lee* as follows : " I wrote you on the 8th *inst.* requesting you to forward a check to my order for 240 dollars, the amount of 40 tons coal, *per* Capt. *Punderson*. Since then I have not heard from you. The letter may have miscarried. If not, your attention to this request will oblige me."

The defendant also introduced evidence to shew, that the coals had been received, by *H. & S. Lee*, or their assigns, before they were demanded by the plaintiff.

The plaintiff gave in evidence the following letter or order, dated *New-York, October* 3d, 1832. " Be pleased to load sloop *Invincible*, Capt. *Punderson*, with 40 tons *Lackawanna*, for my account, and fill bill of lading, as per agreement. For *William G. Jones, Edward Wilde.* To *M. Wurtz* Esq. Agent *Del. & Huds. Canal Co.*" The plaintiff also introduced in evidence the following bill of lading : " Received of the president, managers and company of the *Del. & Huds.*

*Canal Co.*, on board the sloop *Invincible*, whereof I am master, 40 tons *Lackawanna* coal, which I promise to deliver to *William G. Jones*, or order, at *New-York*, he paying freight for the same as agreed; having signed duplicates. Dated at *Rondout*, this 9th day of *October*, 1832. [Signed] *Henry P. Punderson.*"

*Punderson* was the bearer of the letter, and delivered it to *Edward Wilde*, the clerk of the plaintiff, at the plaintiff's office in the city of *New-York*, where the plaintiff resided; he not being then present. Upon the delivery of the letter, *Wilde* wrote and delivered to *Punderson* the above-mentioned order of the 3d of *October*, 1832. With this order, *Punderson* proceeded in his sloop to *Rondout*, and upon his arrival there, delivered it to *Wurtz*, to whom it was addressed. *Wurtz*, in pursuance of the order, severed the coals from a large quantity belonging to the plaintiff, weighed them and shipped them on board the *Invincible*, at *Rondout;* and received from *Punderson* the above-mentioned bill of lading, and immediately forwarded it to the plaintiff. *Punderson* proceeded with the coals directly to *East-Haddam*, without stopping at *New-York*, and, of course, without delivering the coals there.

It was proved to be the usual course of the plaintiff's business to have coals consigned and shipped to himself in *New-York*, when they were not paid for, on delivery of the order for them. No claim was made nor evidence offered, to shew, that *Punderson* had any authority from the plaintiff to carry the coals to *East-Haddam*, or to deliver them to *H. & S. Lee*, other than that which appears from the facts and documents above stated, except that the defendant offered the deposition of *Punderson* to prove, that *Wilde*, at the time of writing the order of the 3d of *October*, verbally authorized and agreed with him, after he should have received the coals, to proceed with them directly to *East-Haddam*, without delivering them, or stopping, at the city of *New-York*. To the admission of this testimony the plaintiff objected, upon the ground that it did not appear, that *Wilde* had any authority to give such instruction to *Punderson;* and upon the further ground, that such testimony was inconsistent with the order of the 3d of *October* and the bill of lading. No communication previous to the attachment was had between the plaintiff and *Punderson*, nor between *Wilde* and *Punderson*, upon the subject of the coals,

*Middlesex,*
*July, 1835.*

*Jones*
*v.*
*Warner.*

except at the time the order was given. The court sustained the objection, and rejected the testimony offered.

The plaintiff eventually obtained a verdict; and the defendant moved for a new trial, on the ground that such testimony was improperly rejected.

*W. W. Ellsworth* and *Storrs,* in support of the motion, contended, 1. That the title to the coals passed to *H. & S. Lee.*

In the first place, a contract was negotiated and *concluded* between the parties. The terms are distinctly stated by *H. & S. Lee,* and assented to, by the plaintiff. The quantity was to be 40 tons; the price 7 dollars per ton; the delivery to be at *Rondout*—in a vessel sent by *H. & S. Lee.* The contract was *complete,* on or before the 3d of *October,* when *Wilde,* the agent, gave the order for the coals, referring to and recognising the "agreement."

Secondly, the coals were in fact severed, weighed and delivered at *Rondout,* in pursuance of the contract. 3 *Stark. Ev,* 1641. From that time they were at the risk of *H. & S. Lee;* and if they had been lost, by dangers of the sea, by embezzlement of the captain, or had been stolen, the loss would have been theirs.

Thirdly, *Wilde,* the agent of the plaintiff, had authority to sell the coals, and gave directions regarding the delivery of them. He was the clerk of the plaintiff, employed in this business, having authority to sell: he, of course, was authorized to give and accept the *terms, viz.* the price, the time of payment, the time, place and manner of delivery, &c. Without this power, he could not transact the business in which he was employed. The rule of law is, that the acts of the agent are binding, if within the scope of his authority; and this, whether the authority be general or special. 2 *Stark. Ev.* 848, *Rex.* v. *Almon,* 5 *Burr.* 2689. 1 *Sw. Dig.* 318. *Gillman* & al. v. *Robinson,* 1 *Carr. & Pa.* 642. (11 *Serg. & Lowb.* 508.) *Winkfield* & al. v. *Packington,* 2 *Carr. & Pa.* 599. (12 *Serg. & Lowb.* 281.) *Capel* & al. v. *Thornton,* 3 *Carr. & Pa.* 352. (14 *Serg. & Lowb.* 343.) *Ashbourne,* admr. v, *Price, Dowl. & Ryl.* 48. (16 *Serg. & Lowb.* 430.) *Doe* d. *Macleod* v. *East-London Waterworks Company,* 1 *Moo. & Mal.* 146. (22 *Serg. & Lowb.* 271.)

*Middlesex,*
July, 1835.

Jones
*v.*
Warner.

Fourthly, the acts of *Wilde* were subsequently approved and ratified, by the plaintiff. See the plaintiff's letter of the 8th of *October ;* and also his letter of the 22nd of *October,* which follows it up.

Fifthly, as there was evidence tending to show the authority of *Wilde,* if his authority was denied, the court should have left it to the jury to decide the question upon the evidence as a matter of fact, directing them, that if they should find no authority, to return a verdict for the plaintiff, otherwise for the defendant.

2. That the testimony of *Punderson* was not exceptionable as conflicting with a written contract between *H. & S. Lee* and the plaintiff. The rule is, that when the agreement is reduced to writing, all previous and contemporaneous negotiations are resolved into the writing, as being the best evidence of the agreement. *Dean* v. *Mason,* 4 *Conn. Rep.* 428. 432. 3 *Stark. Ev.* 1005. Under this rule, the question is between parol and written evidence. To exclude parol evidence, the contract must be in writing ; and the negotiations or declarations must be prior to, or contemporaneous with, the contract. Here, the contract between the plaintiff and *H. & S. Lee* was by parol. This is proved by the letters. The order was no part of the contract, but was given only to carry it into effect. It was given by the plaintiff, on his own agent, *i. e.* on himself, for his own coals. They were severed from a larger quantity *belonging to the plaintiff,* weighed and delivered to *Punderson.* This was a delivery by the plaintiff. The bill of lading given by *Punderson,* after the agreement and delivery, was, evidently, no part of the agreement. *Punderson* had no authority from *H. & S. Lee* to make such agreement, as their agent, nor to bind them in any manner. *Punderson's* business was to *transport* the coals, not to contract for them ; much less, to interfere with the contracts of his employers. The bill of lading was *res inter alios acta*—a contract between the plaintiff and *Punderson,* with which *H. & S. Lee* had nothing to do. 3 *Stark. Ev.* 1054. If *Punderson* has not fulfilled, the plaintiff must look to *him.* Both the order and the bill of lading were merely instruments used by those employed to carry into effect the agreement previously made between the *Lees* and the plaintiff.

*Middlesex,*
*July, 1835.*

*Jones*
*v.*
*Warner.*

*Hungerford*, contra, insisted, That the testimony of *Punderson* was properly rejected. In support of this position, he urged the following considerations.

In the first place, *Wurtz*, the agent of the *Hudson and Delaware Canal Company*, in taking the bill of lading, acted as the agent of the plaintiff; and this bill of lading constituted an express contract between *Punderson* and the plaintiff. 12 *Petersd. Abr.* 12, 13. 3 *Kent's Com.* 162.

Secondly, there was no fraud practised upon *Punderson*, nor any mistake or surprise on his part. *Fuller* v. *Crittenden*, 9 *Conn. Rep.* 401. *Stevens* v. *Cooper*, 1 *Johns. Ch. Rep.* 429.

Thirdly, the whole contract, as between the plaintiff and *Punderson*, was reduced to writing; and all previous negotiations resting in parol, as well as those which were had at the time, are merged in and extinguished by the writing. *Powell* v. *Edmunds*, 12 *East* 6. *Parkhurst* v. *Van Cortland*, 1 *Johns. Ch. Rep.* 282. *Dean* v. *Mason*, 4 *Conn. Rep.* 482. and authorities there cited.

Fourthly, allowing that the bill of lading does not contain the whole contract, no parol evidence could be admitted to contradict it. The *Portland Bank* v. *Stubbs*, 6 *Mass. Rep.* 425. *Barrett* v. *Rogers*, 7 *Mass. Rep.* 291. *Jeffery* v. *Walton*, 1 *Stark. Rep.* 267. *Thomas* v. *Bishop*, 2 *Stra.* 955. *Hoare* v. *Graham*, 3 *Campb.* 57. *Campbell* v. *Hodgson*, *Gow* 74. *Free* v. *Hawkins*, 8 *Taun.* 92. *Woodbridge* v. *Spooner*, 3 *Barn. & Ald.* 333. 4 *Petersd. Abr.* 297, 8.

BISSELL, J. The only question presented by the motion, is, whether the evidence, offered in the court below, was properly rejected.

The evidence was objected to, on two grounds: 1. that *Wilde*, the clerk, had no authority to make the contract offered to be proved; and 2. that the evidence went to contradict the bill of lading.

We are of opinion that, on both grounds, the objection to the testimony was well taken.

1. Had *Wilde* any authority to make the contract offered to be proved, by *Punderson's* deposition?

The case finds, that *Wilde* was the clerk of the plaintiff.

*Middlesex*,
July, 1835.

Jones
*v.*
Warner.

It also finds, that the usual course of business was, to have coals shipped and consigned to himself, when not paid for, on giving the order for their delivery. It is found, that the coals in question were not paid for, on the delivery of the order. The contract set up, then, was out of the usual course of business; and there is no pretence, that the clerk had any *express* authority to make such a contract. Is such an authority to be implied, from his situation, as clerk, in the employment of the plaintiff? The defendant's counsel have affirmed this; and in support of the proposition, a number of authorities has been cited. The case of *Rex* v. *Almon,* 5 *Burr.* 2686. is relied upon. That case merely decides, that evidence of buying a libel, in the shop of a known bookseller, is sufficient *prima facie* evidence to convict him of the publication.

*Starkie,* in his treatise on *Evidence,* (2 *Stark. Ev.* 851.) refers to this case, and, in view of the decision, thus lays down the rule—That the sale, by an agent, in a shop, in *the usual course of business,* is *prima facie* evidence of a publication, with the knowledge and privity of the owner; and he subjoins the following remark: "Although authority to commit an unlawful act will not, in general, be presumed; yet it is otherwise in the case of booksellers and others, where a book or libel is purchased from an agent, *in the usual course of trade.*"

In *Winfield* v. *Packington,* (2 *Carr. & Pa.* 599.) it was decided, that where the clerk of a common carrier informed the sender, that goods would be carried at a certain price, the carrier could not charge an advanced price, although he had instructed his clerks not to take such goods, below the price charged. Here was no established course of business. The clerk had merely departed from his private instructions, and that in a matter affecting the price only.

The case of *Capel* v. *Thornton,* 3 *Carr. & Pa.* 352. proves only, that an agent authorized to sell goods, has, (in the absence of advice to the contrary) an implied authority to receive the proceeds.

And in *Ashbourne* v. *Price,* 2 *Dowl. & Ryl.* 48. it was held, that the admissions of an attorney's clerk, made in the usual course of his business, were binding upon his principal.

A very superficial examination of these authorities, will

evince, that none of them is decisive of the question now before us.

They certainly fall very far short of proving, that a mere clerk in a mercantile establishment, may deviate from the usual and established course of business : that he can bind his principal, by a sale on credit, where the usage is to sell for cash only.

The general principle is believed to be well settled, that the implied authority of an agent is limited, by the usual course of dealing ; and that the master is no further bound, by the acts of his servant, than the authority of the servant to bind him, may be inferred from the manner in which the master has dealt with his servant, and through him with others.

Thus, the master is not responsible for goods ordered by his servant, in his (the master's) name, but without authority, unless he has, on former occasions, paid for goods ordered by him, or there is some other evidence, to show that he had authority for what he did.   *Maundier* v. *Conyers*, 2 *Stark. Rep.* 281.

So also, if a man send his servant with ready money to buy goods, and the servant buy upon credit, the master is not chargeable, unless he has before authorized him to take up goods on credit.   *Paley on Agency*, 137.   *Hazard* v. *Treadwell*, 1 *Stra.* 506.

It is also laid down, that in the absence of particular instructions, a general power to sell, implies a power to sell in the usual way ;—and the authority of an agent to sell on credit, depends entirely on the fact, of that being *the usual mode of dealing* in the particular trade in question.   *Paley on Agency* 173.   2 *Stark. Ev.* 57.   *Chitty on Contracts*, 61, 62.   *Wiltshire* v. *Sims*, 1 *Campb.* 258.   2 *Chitty's Rep.* 353.

Here, the usage was for the seller not to part with his property until it was paid for.   The contract offered to be proved, was not in conformity, but opposed, to the usage ; and as there is no claim that the clerk had any express authority so to contract, the principal was not bound ; and the property in the coal was not parted with, by him.

2. Was the evidence properly rejected, on the ground that the contract offered to be proved, contradicted the bill of lading ?

It cannot be, nor was it denied, in the argument, that the

evidence offered, was inconsistent with the bill of lading, and directly opposed to it: And it, surely, cannot be necessary to cite authorities to prove, that parol evidence cannot be received to vary or controul a written contract.—The existence of the rule was admitted, by the defendant's counsel, but its application denied.

It is said, the coals were sold and delivered at *Rondout,* on the river *Hudson ;* that this is proved, by the letter of the 8th of *October ;* and that the evidence offered went to prove a contract, in virtue of which the coals, *so sold and delivered,* were to be transported directly to *East-Haddam.* It is further said, that *Punderson* signed the bill of lading, in his capacity of a common carrier, and not as the agent of *H. & S. Lee ;* and that the defendant ought not to be precluded, by this act, from proving the contract.

The argument proceeds on a false assumption throughout. The letter of the 8th of *October* proves no such contract as is claimed. It shows, indeed, that an order had been given for the delivery of the coals ; and that they had not been paid for. But it contains no intimation, that they were not to be shipped to the plaintiff ; or that he intended to part with his property, until it was paid for.

The truth is, there never was any contract made between the plaintiff and *H. & S. Lee,* but through *Punderson.* He was the bearer of the letter of the 29th of *September.* And the letter conclusively shows, that nothing was then settled. No contract was then made. Terms of payment are there proposed.

The plaintiff was empowered to draw either through the *East-Haddam,* or *New-London* bank, *or to direct any other mode of payment.*

The very agreement offered to be proved, was claimed to have been made, by *Punderson,* as the agent of *H. & S. Lee.* How, then, can it be claimed, that he was not their agent in signing the bill of lading ? Was he their agent for one purpose, and not for another ? Was he authorized to make the contract claimed ; and had he no authority to vary that contract ? Either *Punderson* was the agent of *H. & S. Lee,* or he was not. And it is of no importance, so far as the present question is concerned, which side of the alternative is adopted. If he was not their agent, no contract for the delivery of the

coals at *East-Haddam*, was ever made. If he was their agent, then the verbal contract claimed to have been made between him and *Wilde*, was merged in the bill of lading. The question is, what contract was, in fact, made ? The letter of the 29th of *September*, the order and the bill of lading constitute an express contract. And they constitute the *entire* contract. How, then, can it be said, that the parol evidence was not offered to vary or controul the written contract ?

Again ; for what purpose, it may be asked, was the deposition of *Punderson* offered ? The claim on the part of the defendant, was, that *Punderson was authorized to deliver*, and had in fact delivered, the coals to *H. & S. Lee*. The authority was denied ; and this was the point in issue. But the bill of lading gave him no such authority. On the contrary, it repelled the idea, that he was thus authorized.

The parol evidence, then, was offered to prove such an authority, in opposition to the bill of lading, and was intended to controul it. Can it be possible to imagine a course more clearly within the rule ?

It has, however, been contended, that the letter of the 22nd of *October* recognizes the contract offered to be proved ; and is a waiver of the contract contained in the bill of lading. If it were proved, that the plaintiff knew any thing of the contract sworn to by *Punderson*, there would be some foundation for the argument. But there was not the slightest evidence of that fact ; and the letter itself contains nothing, from which the inference can be drawn. Was here, then, any waiver ?

The plaintiff, doubtless, knew, that the coals had been transported to *East-Haddam ;* and if he looked only at the bill of lading, (the only contract, of which there is any proof, that he knew any thing,) he knew that they had been carried there wrongfully, and in direct violation of his contract with *H. & S. Lee*.—He was probably informed of their failure ; and he manifests a wish to obtain payment for his property. And is this to be tortured into a waiver of his rights ? We think not. The documentary evidence in the case, clearly proves, that it was not the intention of the plaintiff to part with his property without payment. The evidence offered went to contradict this, and to establish a contract of an entirely different character. We are of opinion, that the evidence was properly rejected ; and the rule must be discharged.

In this opinion the other Judges concurred, except WAITE, J., who gave no opinion, having been of counsel in the cause.

New trial not to be granted.