No. 41.—Wynn, Shannon & Co., plaintiffs in error, *vs.* Pinck-
ney B. Cox, defendant.

[1.] Parol evidence is inadmissible to prove any contract different from the writ-
ten agreement, unless from fraud, accident, or mistake, the instrument fails to
speak the real intention of the parties.

Assumpsit, in Pike Superior Court. Tried before Judge
Floyd, March Term, 1848.

The facts may be found in the opinion of the Court.

King & Moore, and Powers & Whittle, for plaintiffs in er-
ror, cited and commented on the following authorities.

1 *Kelly*, 18, 20.    3 *Kelly*, 216.    9 *Conn.* 401.    1 *Espinasse*,
172. . 1 *Johns.* 138.    7 *Johns.* 341.    2 *P. Wms.* 203.    12 *Johns.*
426.    15 *Ib.* 433.    *Angel on Lim.* 226.    2 *H. Black.* 116.    1
*Bingham*, 281.    2 *More*, 261.    1 *Starkie, N. P. C.* 370.    *Story
Prom. Notes*, 505.    13 *Johns.* 87.    5 *East*, 230–1.    *Prince*, 813.

Wilson & Stark, for the defendant.

The defendant in error, on the hearing of the cause before the
Supreme Court, will insist on the following positions, and rely
on the following authorities :

1st. Position.    That the collection of the notes in money, is
hindered and barred by the subsequent contract of the parties
changing the mode of payment.

*Law vs. Treadwell, 3d Vol. Fairf.* 441, 444.    *Baily vs. John-
son,* 9 *Cowen,* 115.    *Erwin vs. Saunders,* 1 *Cowen,* 250.    *Trumbo
vs. Cartwright,* 9th *Marsh. Ky. Rep.* 582. · *Hill & Cowen's notes
to Phil. Ev.* 1477.    *Crossman vs. Fuller,* 17 *Pick.* 171, 174.    *Hay-
good vs. Swords,* 2 *Baily,* 305.

2d. That the subsequent contract was founded on a sufficient
consideration ; therefore cannot be treated as a *nudum pactum.*
*Comyn on Contracts, tit. Con.    Story on Contracts, tit. Con.
Powell on Contracts, tit. Con. pages* 208, 209, 217, 218, 219, 220,
221 *and* 223.    *Addison on Contracts,* 18, 19, 27, 29, 31, *and* 32.

3d. Though in this case one person made the promise to anoth-
er for the benefit of a third party, although no consideration mov-
ed such third party or person, still it is binding, and the person for

whose use the promise is made, may enforce it. *Comyn on Contracts*, 21. *Story on Contracts, sec's* 450, *and* 210.

4th. That the *admission* of the testimony of the witnesses, contradicts no established rule of law, and the witnesses do not contradict the notes, nor the bill of sale. But the witnesses are called to show what the contract was, and the bill of sale is no part of the contract, as the witnesses show. But the bill of sale shows the execution or rather delivery of the negroes, and amount of consideration.

5th. The rule that *parol* evidence is admissible to contradict, add to, or vary written, only applies when the writing has been made by and between the parties to the suit. *1st Vol. Greenleaf Ev. sec.* 279. *1st Vol. Poth. on Obl. by Evans, p.* 4, *c.* 2, *art.* 3, *no.* 766. 2 *Starkie Ev.* 575. *2d Vol. Poth. on Obl. by Evans, pages* 180, 185 *and* 186. *Addison on Contracts*, 160, 161 *and* 162.

6th. Receipts are only *prima facie*, not *conclusive evidence* of the facts in them, and may, even between the parties, be contradicted by other proof. 1 *Vol. Greenleaf Ev. sec.* 305. 1 *Kelly's Repts.* 23. *Addison on Contracts*, 2.

7th. That the subsequent offer of the defendant to pay the money out of a *particular fund* if *obtained*, was *conditional* and not *binding*, for want of *consideration*, and for want of the assent of the plaintiffs, and if *binding*, it was only *binding* out of that particular fund. *Addison on Contracts*, 36, 34.

8th. Recapitulation of facts. This case presents persons able to contract. Presents them willing to contract. Presents them as having absolutely contracted. Presents them at the house of the defendant. Presents the defendant sending for one of the plaintiffs, to make this identical arrangement. Presents the father of the defendant 50 miles from home with his negroes, to make some arrangement with the plaintiffs. Shows every inducement to the plaintiffs to make this contract. Shows a valuable consideration paid to the plaintiffs, in addition to the $900 on the defendant's notes, to wit : the value of $200 in the negroes, over the amount paid by the plaintiffs for the negroes. Shows the plaintiffs collecting their demands out of the defendant in this way, when they could not do it in any other way. Shows the contract executed advantageous to the plaintiffs, by the defendant through his father. Shows no rule of law to have been broken. We therefore contend, "that the contract is the law of itself." That the evidence to show what the *precise terms of the contract*

*was*, was properly admitted by the Court. That the finding of the jury was correct, from the evidence submitted. That the Court below did not err, in refusing to grant a new trial. 1*st Vol. Poth. on Obl. by Evans,* 38, 22, *and* 2*d, do.* 28. *Powell on Contracts,* 99, 248, 249, 250, 252, *and* 254. *Addison on Contracts,* 247, *especially* ; *and* 248, 249.

*By the Court.*—Lumpkin, J. delivering the opinion.

An action of assumpsit was brought by the plaintiffs in error, against the defendant, in the Superior Court of Pike county, on two promissory notes. In addition to the general issue, &c. the defendant filed a special defence, to the effect that the claims sued on were to be discharged in professional services, to be rendered by the defendant as an attorney at law. It seems that in 1842, the defendant being indebted to the plaintiffs in the sum of $900, in addition to the demands embraced in this action, Robert R. Cox, for the purpose of sustaining the character and credit of his son, by extricating him from his pecuniary embarrassments, sold the plaintiffs three negroes, to wit : a woman and two children, for $1000, $900 of which was to be paid by the cancellation of the defendant's paper to that amount, and the remaining $100 by a note of the plaintiffs to R. R. Cox, payable at ninety days. The following bill of sale was executed and delivered with the slaves: "Received, Griffin, February 24th, 1842, of Winn, Shannon & Co. one thousand dollars, in *full payment* of three negroes, to wit, Keziah, and her two children Margaret and William; all of which negroes I warrant to be sound and healthy, and warrant and defend to the said Winn, Shannon & Co. against the claim of all person or persons whatsoever."

[Signed] R. R. Cox.

*Parol testimony* was offered and admitted on the trial below, to shew, that in addition to the consideration of one thousand dollars, purporting on the face of the instrument to have been received as payment in full for the property, it was further understood and agreed, that the defendant might discharge the remainder of his indebtedness of five or six hundred dollars, in professional services to be rendered as an attorney at law, to the plaintiffs ; and it is to the judgment below, admitting this evidence, that exception is taken.

[1.] It is not pretended that the bill of sale, by omissions or in

sertions, does not speak the real intention of the parties; that by fraud, accident or mistake, it was drawn differently from what was designed. It is not alleged that there is any ambiguity, either patent or latent, requiring explanation. There is nothing equivocal in the terms of the instrument, to make it necessary to resort to the circumstances under which it was made, to ascertain its meaning. It is neither more nor less than a naked attempt to "*add to*" a written instrument by parol evidence, a stipulation which it is insisted was entered into at the time, but which the parties did not see fit to have incorporated. We are satisfied that this cannot be done without infringing one of the soundest and most wholesome rules, which Courts of justice have devised, for the security of private property. 1 *McCord,* 220. *Ib.* 209. 6 *Hals.* 174. *Minor,* 270. 2 *Overt.* 329. 2 *Penn.* 1003. 1 *Penn.* 342. 8 *Vermt.* 243. 4 *Wash. C. C. R.* 289. 5 *Peters,* 390. 3 *Stew.* 140. 7 *J. J. Marsh.* 367. 1 *Chip.* 215. 5 *Cow.* 144. 4 *Dall.* 340. 2 *Day,* 137. 1 *Gallis,* 388. 2 *Port.* 29. 1 *Ham.* 184. *Cooke,* 39. 6 *Rand.* 525. 2 *Leigh,* 630. 1 *Stew.* 425. 2 *Bay,* 94. 2 *J. J. Marsh.* 587. 1 *Bay,* 307. 4 *J. J. Marsh.* 583. 13 *Pick.* 121. 5 *Pick.* 506. 15 *Pick.* 66. 6 *Mass.* 435. 5 *Mass.* 411. 4 *New H. Rep.* 21. 6 *Bin.* 483. 1 *Root,* 196. *Ib.* 160. 1 *Miss.* 74. 1 *Cow.* 249. 7 *J. J. Marsh.* 133. 11 *Conn.* 40. 4 *Ham.* 334. 12 *East,* 6. 1 *Johns. Ch. R.* 282. 4 *Conn.* 482. 1 *Stark. R.* 267. 2 *Stra.* 955. 3 *Camp.* 57. *Gow.* 74. 8 *Taunt.* 92. 3 *Barn & Ald.* 333. 4 *Peters.* 1 *Alr.* 297–8. These authorities establish not only the general proposition that all *previous* negotiations resting in parol, but those also which were had *at the time,* are merged and extinguished by the writing; and that allowing the instrument does not contain the whole contract, oral proof is inadmissible to supply the deficiency, unless it was occasioned by some fraud practised on the vendor, or by some mistake or surprise on his part.

But while the general rule is not denied, it is sought to withdraw the present case from its operation, either upon the ground that the instrument here is a mere *receipt,* and therefore liable to be explained, or even contradicted, or else that the entire contract was not reduced to writing, and that while the bill of sale is complete as to the warranty of title and soundness, it does not contain the whole consideration of the purchase.

We grant that a receipt is an exception to the general rule,

that verbal evidence is inadmissible to vary a written agreement; and that they are *prima facie* only, and not conclusive proof of the facts recited in their face. We have endeavored to show, however, in *Tarver vs. Rankin*, 3 *Kelly*, 216, that there is a limit even to this doctrine; and to establish that, if a receipt is given with the full knowledge of all the circumstances, there being no misapprehension, fraud or imposition, parol evidence cannot be received, to contradict, alter, add to, or diminish it.

But we apprehend that this instrument does not come under the exception applicable to receipts. And for the purpose of sustaining the judgment which we feel it to be our duty to render on this writ of error, a few cases will be adduced from the countless number which are scattered broad cast, in the books of Reports.

In *Emory vs. Chase*, 5 *Green.* 232, one Joshua Emory made a grant of land, by deed of bargain and sale, to Chase, his son-in-law, "reserving" to the grantor "the improvement of the one half of the premises, with necessary wood for family use, during his own natural life and the life of his wife, H. E." In a contest between the widow and tenant, after the death of the grantor, it was attempted to prove, by parol testimony, that at the time the deed was executed, the tenant, in addition to the consideration expressed in the instrument, verbally engaged to pay the grantor's debts, amounting to $800, or $1000, &c. Counsel for the tenant resisted the reception of the parol testimony, on the established principle, that it could not be admitted to affect a deed, which was free from any latent ambiguity.

On the other hand, it was urged, that it was competent to show the situation of the family, *and the value of the estate at the time of the conveyance.* (The very thing which was allowed to be done on the trial below. R. R. Cox swore, that but for this verbal undertaking, he would not have taken less than $1200 for the negroes.) Weston, J. delivered the opinion of the Court: "We are clear that this parol testimony is inadmissible. There is no latent ambiguity in the instrument; and its effect must be determined by the legal construction of the terms used."

*Preston vs. Merceau, Executor,* 2 *W. Black. R.* 1249, was an action on the case for the use and occupation of a house of which, on the 21st of July, 1775, it was agreed in writing, "that a lease should be let by Christiana Preston to Abraham Gamage, for

twenty-one years at £26 per annum, to commence from Michael-mas, then next." On the trial, the plaintiff offered to show, by parol evidence, that besides the £26 per annum, the defendant had agreed to pay £2 12s. 6d. per year, being the ground rent of the premises to the ground landlord. DeGray, C. J. rejected the evidence, and awarded a non-suit. Davy and Grose moved now, to set aside the non-suit, alleging that this was evidence *not to alter*, or *vary*, but to *explain* the agreement. By the Court. "I am clearly of opinion, that the Lord C. Justice did right in re-jecting this proof. Courts should be very cautious in admitting any evidence to *supply* or explain written agreements."

In *Stone vs. Vance et al*. 6 *Ohio R*. 246, the payee of a note executed to the maker, the following receipt: "Received, Dayton, Jan. 6, 1830, of Jacob L. Vance, a note signed by himself, A. Harrison and R. Dove, payable at the Franklin Bank of Colum-bus, in four months from January, 1830, for $600, which note, if discounted at said Bank, $500 is to be applied to said Vance's credit with the late firm of Stone & Bostwick. (Signed) Na-thaniel F. Stone." An attempt was made to show that the writing did not contain the entire understanding of the parties, which was resisted, on the ground that the receipt having been execu-ted and delivered, it cannot be enlarged, restrained, contradicted nor varied by parol proof of any agreement made before or at the time of its execution, unless there is some latent ambiguity. And Wood, J. expressing the judgment of the Court, says, "This is in our view a well settled principle, and one which ought not to be overthrown."

In *Veacock vs. McCall, Gilpin*, 329, it was decided that where shipping articles specify the wages of the mate of a vessel, he cannot give parol evidence of an agreement to allow him other compensation. *Kittera*, of counsel for the libellant, contended that the rule now adopted for the admission of parol evidence where there is a written contract, is, that it shall not be received to contradict, but it may be to explain it, by showing what pass-ed between the parties at the time it was made. That it was not necessary that this contract should be in writing. That one part might be in writing, another in parol. *That the evidence did not relate to the wages which were stipulated, but to compensation of a peculiar and additional nature*, and that Courts of Admiralty, es-pecially, would protect such agreements, though not stated in

the articles. *Dunlap,* for the respondent, answered that the articles contained the whole of the contract between the parties, and the attempt made was to vary that contract. It is an endeavor to prove that the libellant is entitled to a higher compensation than that stated in the articles. They are the written and solemn evidence of the contract. The object of the law is to prevent these verbal arrangements, and to ascertain in a solemn form, the rights and duties of all parties. The decisions of the Courts of Admiralty, and Common Law, have uniformly sustained this principle—citing, 1 *Story's Laws,* 102. *Abbott's Shipping,* 434, 441. *Bartlett vs. Wyman,* 14 *Johns. R.* 260. *Johnson vs. Dalton,* 2 *Cowen,* 543. *White vs. Wilson,* 2 *Bos. & Pull.* 116. *Elsworth vs. Woolmore,* 5 *Espinasse,* 84. Judge Hopkinson rejected the evidence.

*Gazeway vs. Moore, Harper's L. Rep.* 401, was a case of this sort. Defendant gave to plaintiff a note for $80, " for the hire of his negro man, Abraham.". Moore took up the note when it fell due. Gazeway, however, claimed the further sum of $20, upon proof of a verbal agreement between Moore and himself, that he would pay that much more than the sum expressed on the face of the paper, provided cotton should bring $3 per hundred that season. 'The opinion of the Court was delivered by Mr. Justice Gantt. " The note which was taken to secure the payment of the hire, expressed on its face the consideration which was to be paid. It is unqualified in the terms used, and purports to be the entire sum which, by the agreement, was intended to be paid for the services of the negro. Whatever views, therefore, may have been entertained by the parties, previous to giving the note, they must give way to the certain and fixed terms expressed in the writing, which consummated the contract between them. It would be of dangerous tendency to permit a written contract, the terms whereof are explicit, and constitute the law by which it is to be judged of, to be impugned and varied by oral testimony. This principle would clearly be violated, if it were competent for the plaintiff to prove an additional sum beyond that expressed in Moore's written agreement, for the hire." " There would be no end to litigation, were it otherwise. A man entering into a contract might be made to answer in as many different ways, as the terms of the contract might be varied by human ingenuity. This would lead to grea. injustice, cru-

elty and wrong. Fortunately for mankind, this is not the rule of jurisprudence here or elsewhere."

On the 28th of August, 1822, Thomas Spier executed a writing, in the following words: "Received of James Clay, four hundred and fifty dollars in full payment for two negroes, and Dave her son, for which negroes I do warrant, and forever defend the right and title to said negroes, against all claim or claims whatsoever, and likewise do warrant them to be sound and healthy. Whereunto I put my hand and seal. (Signed) Thomas Spier, [L. S.] Witness, G. M. Smith."

Afterwards Spier and Clay being together, Clay called on a witness, and informed him that he wished him to take notice that the writing above, was given under the following conditions, to wit: That Clay had loaned Spier $100, and that Clay was about to go to Virginia; if on his return, Spier should pay the $100, then Speir should retain the slaves, named in the instrument; but if he did not pay the $100, then Clay was to pay the plaintiff, (Spier,) $350, in addition to the $100, and keep the slaves. Clay went to Virginia, leaving the slaves, and shortly thereafter died, without returning; his administrator took possession of te negroes, and suit was brought for the $350, on the express promise of Clay. The presiding Judge, Daniel, charged the jury, that the bill of sale acknowledged the receipt of the purchase money of the slaves, and that the parol evidence was inadmissible to establish an entirely different contract. That if the parties understood what they were about when the writing was executed, and there was no fraud in the procurement of it, then the acknowledgment as to the consideration could not be varied. The jury having found for the defendant, the case was carried up to the Supreme Court of N. Carolina. L. Martin for the appellant asked, "what part of this transaction is it, that we call a contract? Is it not the agreement in writing between the parties to transfer the title to the slaves for $450? Does it vary, add too, or contradict any part of the contract, to prove this agreement? A party may prove other considerations than those expressed in the conveyance, &c. Hawks for appellee, referred to the previous adjudications in that State, and was about to examine how far the consideration was made out for the defendant's promise, when he was stopped and the judgment below *affirmed.* 4 *Hawk's L. and E. R.* 22.

As was said by Chief Justice Taylor, in the previous case of

*Brockett vs. Foscue,* how manifest the justice of the plaintiff's claim in this case, how unconscientious the defence. And under such circumstances, how desirous are Courts to ascertain, if possible, some solid ground of law, on which the right can rest. But at every turn, this stubborn rule stares you in the face, that you cannot by parol contradict the writing.

On this rule, Lord Coke observes, " it would be inconvenient that matters in writing, made by advice and on consideration, and which finally import the certain truth and agreement of the parties, should be controlled by an averment of parties, to be proved by the uncertain testimony of slippery memory; and it would be dangerous to purchasers and all others in such cases, if such *nude* averments, against matter in writing, should be admitted." *Earl of Rutland's Ca.* 5 *Rep.* 26, *a. first resolution.*

And again, in the language of Lord Ellenborough, it might be said, " if the parol evidence, were admissible in this case, in what instance might not a party, by parol testimony, superadd any term to a written agreement, which would be setting aside all written contracts and making them of no effect."

We will only add, that we not only consider this a salutary rule of law, but it is equally a rule of common sense, that written contracts should not be controlled by oral testimony. In despite of *hard* cases, which usually make *bad* law, we have labored to uphold this rule in all its stringency. The various conceptions of different minds on the same subject, the liability of all persons to misapprehension and forgetfulness, the influence of passion, prejudice and interest, render parol agreements at all times uncertain. But *litera scripta manet.* We hold, that the verbal evidence in this case, was improperly admitted, and on this account a new trial must be granted.

We are not sure but that the motion for a new trial in the Court below, ought to have been sanctioned, on the ground that the verdict of the jury was contrary to evidence. Two witnesses were examined in behalf of the defendant, R. R. Cox, his father, who sold the slaves to the plaintiffs, and Gabriel H. Cox, a brother. Their evidence is pretty much the same. The latter being only present a part of the time while the trade was negotiating. I will refer to the testimony of the old gentleman; one whose recollection is full and distinct, respecting the transaction. He states that his reason for making the sale was, that the

defendant was indebted to the plaintiffs more than he was able to pay, and not wishing to see a son of his involved, and without the means of satisfying his just debts, and understanding that suit was about to be instituted against his son, and hoping to relieve him from harrassment, he went to Griffin, and sent for John O. Wynn, one of the firm of Wynn, Shannon, & Co. to come and see the negroes. On the arrival of Wynn, he informed him of his motive in selling the property, and proposed that if he would give him a fair price for the negroes, and wait, and not sue for the balance, he would let them go. "*The precise terms*," says this witness, "*of the contract, were, that* $1000 *was to be given for the negroes,* $900 *was settled on the spot, for defendant, in notes taken from said Wynn, and credits, and* $100 *in plaintiffs' note, payable to me in ninety days.*" The witness continues: "He promised me not to sue for the balance, and bound himself to give defendant collecting business for plaintiffs in as many counties as defendant could attend, and which he represented would be more than sufficient to pay the residue of the debt; and that if the defendant had to be sued for the balance, Wynn psomised that he would give to defendant the collecting of the claim against himself, and that, in consideration of these promises, he let the negroes go at $200 less than he would otherwise have taken from them."

Which of these undertakings, on the part of the plaintiffs, will the defendant seek to enforce? To give him collecting business sufficient to discharge his remaining liability, is one thing, and to allow him to sue himself, another, and a very different agreement. Can the true intent and meaning of this transaction be misunderstood? The father of the defendant, understanding that his son was likely to be pressed, seeks an interview with his creditor. He is prompted to take this step by the most praiseworthy motives. The parties meet and talk the matter over. The price of the property, and the mode of payment, are agreed on; $900 of Pinkney B. Cox's debts is cancelled, and the purchasers give their note at 90 days for the other $100. And this is the entire contract, and it is reduced to writing. The creditors, in a spirit of corresponding good feeling, promise to wait for the rest of their debt. (The proof shows that they delayed more than two years before this action was commenced.) Also, that they would patronize the defendant in his profession, ex-

pressing the belief that their collections in that region of country, would pay him enough to meet the balance of his liability. At any rate, if they were forced ultimately to sue, they agreed that they would employ him to sue himself. Was there, in all this, any legal or valid agreement, which would extinguish the notes which are the foundation of this suit?

Mr. P. B. Cox, himself, does not seem so to have understood it, For, on the 22d of July, 1843, some seventeen months afterwards, he addressed a letter to the plaintiffs, in which he says: "Money is so scarce I can hardly get enough to live on, *let alone what I oughtto have for you.* I have sold property of the Co. (meaning the Monroe R. Road Co.) but it is hung up for division, and claimed by other *fi. fas.* so that I will have to sell again, which, as you will see shortly, I am about to do. I write no more, but am yours, &c." And again, on the 25th of December, of the same year, (1843,) he writes: " I have some money hung up, arising from the sales of property of the Monroe R. Road Co. which, if I be lucky or fortunate enough to obtain, you shall be paid ; you shall be, if I am not left out of it."

Now, without deciding the question mooted at the bar, as to whether or not the defendant would not be bound upon these subsequent promises, based upon the old debt, I would submit, that they show most conclusively that Mr. Cox did not consider himself protected from payment, under the original contract made with his father. He acknowledges his liability, and that the money ought to be paid, and while apparently using all diligence to obtain the means of meeting this demand, he regrets his inability to do so, owing to the scarcity of money. But in these *later* writings, or in the *first*, not one word is uttered as to the agreement which is now sought to be established by the parol testimony.

The judgment below is reversed, and the cause remanded, with instructions to order a new trial.